UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHABBU SAHMAL OWENS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, *et al.*,

    Defendants.[1]

Case No. 15-10920
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER
ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [19]**

In 1990, Plaintiff Chabbu Sahmal Owens, then 19 years old, experienced knee pain during Marine Corps' basic training. (R. 10, PID 1008.) The knee pain was traced to first, pes planus (flat foot), and later, pes cavus (a high-arch deformity in the foot). (R. 10, PID 78, 682, 994, 1008.) In 1991, Owens was discharged, honorably, from the military due to his medical condition. (R. 10, PID 73, 196–97.)

About two decades later, in 2012, Owens applied for period of disability benefits, disability insurance benefits, and child's insurance benefits from the Social Security Administration. (R. 10, PID 50.) At the time of his application, Owens suffered from a host of medical issues, including, neck, lower-back, knee, and foot pain, diabetes, and mental-health problems. (R. 10, PID 56.) But to receive child's insurance benefits, Owens had to establish that he was disabled before his 22nd birthday, i.e., before October 10, 1993. (R. 1, PID 50–51.) And

---

[1] Although the complaint names only the Commissioner of Social Security (*see* R. 1), the case caption includes Michigan Attorney General Bill Schuette and U.S. Attorney Barbara McQuade. As this was apparently a mistake, the Clerk of Court is directed to amend the case caption to remove Schuette and McQuade.

to receive period of disability and disability insurance benefits, Owens had to establish disability prior to his "date last insured," i.e., before June 30, 1998. (R. 1, PID 50.) In other words, to receive benefits, Owens had to show that he became disabled about 15 years earlier.

An Administrative Law Judge, acting on behalf of Defendant Commissioner of Social Security, decided that Owens was not disabled any time "prior to" October 9, 1993 (apparently a typo) through June 30, 1998. (R. 10, PID 59.) This determination became the Commissioner's final decision once the Administration's Appeals Council denied review. (R. 10, PID 32.)

Owens then appealed here. *See* 42 U.S.C. § 405(g). Pursuant to administrative order, both his and the Commissioner's motion for summary judgment were referred to Executive Magistrate Judge R. Steven Whalen for a report and recommendation. The Magistrate Judge recommends granting the Commissioner's motion and affirming the disability determination of the Commissioner. (*See generally* R. 19.)

Owens makes four objections to the Magistrate Judge's report. (*See generally* R. 20.) Upon *de novo* review of the portions of the report to which Owens has objected, *see* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3), the Court will overrule Owens' objections and adopt the report.

*Objection 1*. Owens first argues that the evidence of jobs that he could perform despite his impairments was insufficient. (R. 20, PID 1090.) In particular, Owens claims that the vocational expert only identified about 3,300 jobs in Michigan (an area of "40,352 square miles" he reminds the Court) and that there was no evidence that the jobs were near his residence or that they still exist. (R. 20, PID 1090–91.)

Owens did not make this argument in his motion for summary judgment. (*See generally* R. 15.) And, generally, district judges do not address arguments that are not presented to the

2

magistrate judge. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517–18 (6th Cir. 2010); *Mitchell v. Cnty. of Washtenaw*, No. 06-13160, 2009 WL 909581, at *4 (E.D. Mich. Mar. 31, 2009) (citing cases). There are at least two reasons for this rule: "Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate [judge], wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988). Although there may be cases where this Court will consider an argument not put before the magistrate judge, Owens has not persuaded the Court that this is such a case. For instance, Owens has not explained why he did not raise this argument earlier. Nor does his argument appear meritorious.

Accordingly, the Court does not address Owens' claim about the number of jobs the vocational expert identified.

*Objection 2*. In his next objection, Owens latches onto the vocational expert's testimony that if a person had to miss four (or more) days of work per month, he would not be able to sustain full-time employment. (R. 20, PID 1091–92.) Owens says that because his knees lock up "sporadically" and because the calluses on his feet are regularly pared down, he would have to miss at least four days of work per month. (*Id.*)

The basis for this argument was also not raised in his motion for summary judgment. True, Owens did argue in that motion that he would have to miss four or more days of work. (R. 15, PID 1035.) But the basis of this argument was that the Veterans Administration's "examining physician's determination of unemployability" was "virtually equivalent" to the vocational

3

expert's testimony that missing four days per month is work preclusive. (*Id.*) In other words, Owens argued that the ALJ should have deferred to Veterans Administration's findings. (*See id.*)

Even if the Court were to find that Owens had properly raised this argument in his summary-judgment motion, the Court would find it does not demonstrate reversible error. First, Owens merely asserts, without citing medical records, that his knees and callus treatment would cause him to miss at least four days of work per month. (*See* R. 20, PID 1091.) Further, even accepting this bald claim only leads to the conclusion that Owens' *current* condition requires him to miss too many days of work. The question, though, is whether—as of 1993 or 1998—Owens' condition and treatment required him to miss too much work. And Owens cites no records showing that he was having his calluses regularly pared down at that time.

Accordingly, the Court overrules Owens' second objection.

*Objection 3.* As his third objection, Owens implies that the ALJ erred in citing his ability to play a round of golf as indicative of an ability to work. (R. 20, PID 1092.) Owens stresses that the inability to "engage in any substantial gainful employment" as used in the Social Security Act's definition of disability, *see* 42 U.S.C. § 423(d)(1)(A), does not demand that the claimant be "unable to function in any way." (R. 10, PID 1092.)

Owens is correct. But it is apparent that the ALJ did not demand that Owens demonstrate that he was disabled from performing any and all activities. For one, the ALJ cited the standard set out in § 423(d)(1)(A). (R. 10, PID 50.) Second, a claimant's activities of daily living is a factor in assessing a claimant's complaints of pain, 20 C.F.R. § 404.1529(c)(3)(i), and a review of the ALJ's narrative does not suggest he placed undue weight on Owens' ability to play golf (*see* R. 10, PID 55–57). The Court thus finds no reversible error in the ALJ's opinion (or the Magistrate Judge's report) in this regard.

Owens also takes issue with the ALJ's determination (and the Magistrate Judge's determination that the ALJ's determination was reasonable) that the evidence of record was insufficient to support a finding that he was disabled prior to turning 22 or prior to his date last insured. (*See* R. 10, PID 1092–93.)

Before addressing this claim of error, it is necessary to refine it. Owens is not "disabled" under the Act if a substantial number of jobs are available to someone with his "residual functional capacity." Here, the ALJ found that Owens' had the residual functional capacity to perform sedentary work, which generally requires only about two hours of standing or walking in an eight-hour workday, *see* S.S.R. 83-10, 1983 WL 31251, at *5; 20 C.F.R. § 404.1567(a), so long as that work had only "occasional" (one-third of the day) stooping, kneeling, and crouching, only "occasional" ramp or stair climbing, and only "occasional" pushing and pulling with the legs (including the operation of foot pedals). (R. 10, PID 53.) And, as discussed, the vocational expert testified that a person with this residual functional capacity could perform a substantial number of jobs. So to succeed on this claim of error, Owens must show that the evidence was so one sided that the ALJ unreasonably determined that he could perform a reduced range of sedentary work.

Owens cannot make this showing. To be sure, some evidence indicates that Owens had considerable functional limitations even as early as 1993 or at least by 1998. In 1991, Owens was diagnosed with "pronated pes planus, bilateral" "infrapatellar bursitis, bilateral" and "possible posterior tibial tendinitis." (R. 10, PID 994.) And that year, a physician limited Owens to "no extensive walking or lifting" until Owens' knee, shin, ankle, and feet pain resolved. (R. 10, PID 996.) And in 1992, Owens complained to a physician that he had constant pain in his knees and feet since 1989 and that he experienced numbness in both feet with activity or standing. (R. 10,

PID 984.) The physician's notes provide, "unemployed now because not able to tolerate standing." (*Id.*)

But the foregoing must be weighed against the contrary evidence of record. In 1996, Owens complained of left knee stiffness and swelling "while playing active sports or while working cleaning carpets for a prolonged period of time." (R. 10, PID 1009.) In fact, the physician's notes indicate that Owens complained of "sharp knee pain while running." (*Id.*) At that exam, Owens had a "normal but shuffling" gait and had "fair toe-to-toe, heel-to-heel and heel-to-toe maneuvers with obvious pes planus noted." (*Id.*) And in 1997, Owens reported "persistent pain while playing 18 holes of golf." (R. 10, PID 286.) And nothing suggests that Owens' condition improved from the time he left the military and was engaging in "active sports" in 1996 and 1997.

In all, the Court cannot say that the evidence is so one sided that the ALJ unreasonably determined that, in 1993 and 1998, Owens could perform a job that involves only about two hours of walking and standing and only "occasional" use of the lower extremities. As such, the Court must overrule Owens' third objection. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

*Objection 4*. Lastly, Owens objects to the Magistrate Judge's summary of the ALJ's findings about his mental health. (R. 20, PID 1093.) Although acknowledging that he was not diagnosed with any mental-health disorders until 2009, Owens claims there is a "presumption that he suffered from the mental health conditions far before they were diagnosed and treated."

6

(*Id.*) Owens points out that bipolar disorder is among the mental-health conditions he has been diagnosed with, and that "[b]ipolar disorder is a lifelong condition." (*Id.*)

Owens did not present this argument to the Magistrate Judge. And he has not provided a good reason for not doing so. Further, the argument is not plainly meritorious. As such, the Court declines to consider Owens' mental-health argument. *Swain*, 379 F. App'x at 517–18; *Mitchell*, 2009 WL 909581, at *4.

And even if the Court were to consider it, the Court would not find that the ALJ reversibly erred. Owens cites no evidence for his claim that bipolar is a "lifelong" condition. And even if it, or one of his other mental-health conditions, existed prior to 1993 or 1998, that is not the relevant inquiry. The proper question is whether Owens had functional limitations caused by his mental-health conditions prior to 1993 or 1998. Yet Owens cites no evidence indicating that he was functionally limited due to his mental-health conditions during the relevant time period. Further still, Owens says nothing about the ALJ's alternative hypothetical, which included a host of limitations to account for mental-health deficiencies, or the fact that the vocational expert testified that there were jobs for such an individual. (R. 10, PID 109–11.)

\* \* \*

For the reasons given, the Court is not persuaded by Owens' objections. Accordingly, they are overruled. The Court ADOPTS the Magistrate Judge's report and recommendation (R. 19), GRANTS the Commissioner's motion for summary judgment (R. 16), and DENIES Owens'

(R. 15). As this opinion and order disposes of all matters in this case, a separate judgment will issue.

**SO ORDERED.**

Dated: September 29, 2016

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 29, 2016.

s/Keisha Jackson
Case Manager